UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXCELSIOR CAPITAL, LLC,<br><br>              Plaintiff,<br><br>- against -<br><br>CHRISTOPHER DEVINE, BRUCE BUZIL, ROBERT E. NEIMAN and GREENBERG TRAURIG, LLP,<br><br>              Defendants.<br><br>CHRISTOPHER DEVINE,<br><br>             Third-Party Plaintiff,<br><br>- against -<br><br>C. ROBERT ALLEN, III and LUKE ALLEN, as Guardian for the Property Management of C. Robert Allen, IIII,<br><br>            Third-Party Defendants. | Civil Action No.:<br><br>10-cv-01319-ADS-ARL<br><br>J. Spatt<br>M.J. Lindsay<br><br>Jury Trial Demanded |

## CHRISTOPHER DEVINE'S THIRD-PARTY COMPLAINT

   Defendant/Third-Party Plaintiff Christopher Devine, for his Third-Party Complaint against Third-Party Defendants C. Robert Allen, III ("Allen") and Luke Allen, as Guardian for the Property Management of C. Robert Allen, III ("Luke Allen"), states as follows:

### PARTIES

   1.  Devine is an individual and a resident of the State of Illinois.

   2.  Allen is an individual and resides at 21 Hicks Lane, Port Washington, New York 11050-1307.

   3.  Luke Allen is Guardian for the Property Management of C. Robert Allen, III, and resides at 211 Muddy Run Road, Oxford, Pennsylvania 19363-1003.

## JURISDICTION

4. This Court has subject-matter jurisdiction over Devine's claims in this Third-Party Complaint under 28 U.S.C. § 1367(a), because they are so related to the claims of Plaintiff Excelsior Capital, LLC ("Excelsior") within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Allen because he is a New York resident.

6. This Court has personal jurisdiction over Luke Allen because Luke Allen became Guardian for the Property Management of Allen by order of a New York State Court. This Court also has personal jurisdiction over Luke Allen because Luke Allen brought an action in this Court on behalf of Allen in the case captioned *C. Robert Allen III, by Luke Allen, as Guardian for the Property Management of C. Robert Allen, III v. Devine, et al.*, No. 09-CV-0668. This Court also has personal jurisdiction over Luke Allen under CPLR § 302 because Devine's cause of action arose from Luke's commission of a tort within the State of New York.

7. Venue is appropriate in this District because Allen resides in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

8. In this case, Excelsior has filed a Complaint against Devine, Bruce Buzil, Robert E. Neiman, and Greenberg Traurig, LLP. The Complaint makes claims under the Racketeer Influenced and Corrupt Organizations Act (Counts I-VI), common law fraud (Count VII), vicarious liability (Count VIII), and breach of contract (Count IX).

9. Excelsior alleges as a factual allegation common to all counts of the Complaint that Excelsior loaned Devine, Buzil, and Superior Broadcasting Co. millions of dollars based upon intentionally false representations to Richard Davis, Excelsior's principal, by Devine, Buzil, Neiman,

and Allen, and that Excelsior has been damaged as a result. Excelsior has alleged that Devine, Buzil, Neiman, and Greenberg Traurig are liable for the alleged damages.

10. The Complaint contains many allegations concerning Allen's role in the alleged fraudulent scheme. For example:

    a. Paragraph 9 alleges: "In 2003, Davis became friendly with his neighbor Allen, the son of one of the founders of the famed investment house, Allen & Co."

    b. Paragraph 10 alleges: "Allen represented himself to Davis as a very sophisticated billionaire investor and, over time, offered Davis an opportunity to invest – through loans bearing favorable interest returns – in a company known as Superior that supposedly operated radio stations."

    c. Paragraph 11 alleges: "Allen explained to Davis that Superior was very well-run by Defendants Devine and Buzil."

    d. Paragraph 12 alleges: "On or about January 15, 2004, Davis lent Superior $400,000."

    e. Paragraph 13 alleges: "Thereafter, commencing in at least March of 2004, the Fraud Defendants, aided and abetted by Allen to further Allen's own selfish financial goals, participated in a scheme to defraud Excelsior of millions of dollars by, *inter alia*, offering non-existent security for the first of a series of loans. Had Davis known that the first of these loans made by Excelsior was predicated upon a fraudulent representation that the loan would be secured by an asset that was owned by – but in fact was not owned by – Superior Nevada, Excelsior would never have made that first loan or any loans thereafter."

    f. Paragraph 14 alleges in part: "On March 11, 2004, at Allen's urging, Davis met with Defendants Neiman, Devine and Buzil at a charity dinner held at the Pierre Hotel on East 61st


LAW OFFICES
Peckar &
Abramson
A Professional Corporation

Street in Manhattan, New York." The Complaint also alleges that the false representation referred to in Paragraph 13 of the Complaint was made at this charity dinner that caused Excelsior to make loans.

   g.  Paragraph 19 alleges: "Davis trusted Devine and Neiman because (a) Allen, supposedly Davis's close friend, had vouched for Devine as an honest and gifted businessman, who had been Allen's trusted business associate for more than 20 years and was among the 'best that I [Allen] have ever seen' and (b) the involvement of GT, through Neiman, as lawyers lent great credibility to the deal. Hence, the representation that Superior Nevada actually owned KBZB convinced Davis that the $5 million dollar loan would be adequately secured – indeed over-secured."

   h.  Paragraph 41 alleges in part: "On January 27, 2006, at Allen's request and, according to Allen and for the explicit purpose of calming any and all fears on the part of Davis, Davis and his wife met with Devine and Neiman at the Marriot Hotel at LaGuardia Airport in the Eastern District of New York. At this meeting, and in furtherance of the Fraud Defendants' scheme to defraud, Devine and Neiman provided Davis with a list of assets which they claimed proved that Devine's and Buzil's ownership interests in various companies exceeded $200 million, and that Excelsior's loans were not in danger. The document was fraudulent in that, *inter alia*, it once again represented that Superior Nevada owned KBZB."

  11.  Devine has answered the Complaint, denying its material allegations and setting forth various affirmative defenses.

  12.  In bringing this Third-Party Complaint, Devine does not admit any of the allegations asserted against it in the Complaint. Devine's allegations in this Third-Party Complaint are not, and should not be construed as, admissions of any fact or any liability to Excelsior or to any other person or entity.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

## COUNT I
### (Contribution Against Allen Under N.Y. C.P.L.R. §§ 1401-1402)

13. Devine repeats, realleges, and incorporates by reference Paragraphs 1-12 of this Third-Party Complaint as though fully set forth herein.

14. If, and to the extent that, any party may have made a misrepresentation of fact to Davis as alleged in the Complaint, Allen made a misrepresentation of fact that was known to be false and intended to be relied on when made to Davis and/or aided, abetted or participated in a scheme to defraud Excelsior as alleged in the Complaint.

15. If, and to the extent that, Davis may have reasonably relied on a misrepresentation of fact as alleged in the Complaint, Davis reasonably relied upon Allen's misrepresentation of fact and/or Allen's role in aiding, abetting, or participating in a scheme to defraud Excelsior as alleged in the Complaint.

16. If, and to the extent that, Davis did in fact suffer damages as alleged in the Complaint, then such damages are the direct and proximate result of Allen's acts, or are otherwise the legal responsibility of Allen.

17. If Devine is found to be liable to Excelsior for any amount under Count VII of the Complaint, then Devine is entitled to contribution from Allen in an amount equal to the excess paid by Devine over and above his equitable share of the judgment, calculated pursuant to N.Y. C.P.L.R. § 1402.

WHEREFORE, Devine prays that, if he is found to be liable to Excelsior under Count VII of the Complaint, judgment be entered in Devine's favor and against Allen and for relief as follows:

(A) Contribution from Allen in an amount equal to the excess paid by Devine over and above his equitable share of the judgment, calculated pursuant to N.Y. C.P.L.R. § 1402;

(B) Costs and disbursements;

(C) Pre- and post-judgment interest as allowed by law; and

LAW OFFICES
Peckar & Abramson
A Professional Corporation

(D)     All other and further relief, at law or in equity, as this Court may deem just and proper.

## COUNT II
### (Breach of Contract Against Allen)

18.     Devine repeats, realleges, and incorporates by reference Paragraphs 1-12 of this Third-Party Complaint as though fully set forth herein.

19.     On or about January 9, 2006, Allen executed a contract for good and valuable consideration in the form of a letter to Neiman and Robert Wessely. Allen sent copies of the executed contract to Neiman, Wessely, and Devine, who accepted the terms of the contract.

20.     In the contract, Allen agreed to indemnify and hold Devine harmless if Devine is sued based on a challenge to the business relationship between Allen and Devine:

> This will confirm that I have loaned many millions of dollars either to Christopher F. Devine ("Devine") directly or on behalf of some entity or Superior without any traditional documentation. . . . Devine has used those funds with my knowledge and approval to fund Superior and purchase in single purpose entities many radio broadcast stations.
>
> . . . .
> To the extent that any third party or any persons allegedly acting in my name or on my behalf subsequently challenges . . . the business relationship with Devine particularly as to the prior loans and investments, attempts to create personal liability for Devine (except for his failure to comply with his obligations to Superior pursuant to the Documents), and makes any claims or demand against Robert E. Neiman, Greenberg Traurig, LLP, Robert Wessely, Arnold & Porter, LLP, the management, including the officers, directors, agents, and representatives of both Major and Superior, and Devine (the "Protected Parties"), I herewith agree to indemnify and hold harmless the Protected Parties and each of them from any such claim and demand, including without limitation, all costs and attorney's fees and shall advance or cause to be advanced sums on a bimonthly basis incurred in defense or resolution of such claims or demands.

21.     Excelsior's Complaint in this action challenges the business relationship between Allen and Devine. Specifically, Excelsior alleges that Allen, Devine and others defrauded Excelsior out of millions of dollars. Excelsior also alleges that Allen participated in this fraudulent scheme by, among other things, "vouch[ing] for Devine as an honest and gifted businessman, who had been Allen's trusted

business associate for more than 20 years and was among the 'best that I [Allen] have ever seen' . . . ." Therefore, Excelsior's claims are covered by the January 9, 2006 contract.

22. By letter dated April 6, 2010, Devine demanded that Allen indemnify and hold him harmless from this action, including the payment of all costs and attorney's fees already incurred as a result of defending Devine. Devine also demanded that Allen advance on a bimonthly basis all costs and attorney's fees incurred in defense or resolution of this action.

23. Despite Devine's demand, Allen has not agreed to indemnify and hold Devine harmless for this action, including payment of all costs and attorney's fees already incurred as a result of defending Devine, and payment in advance on a bimonthly basis of all costs and attorney's fees incurred in defense or resolution of this action.

24. Devine has met and satisfied all of the conditions and performed all of his obligations under the contract.

25. Allen has breached his obligations under the contract by failing to indemnify and hold Devine harmless for this action, including payment of all costs and attorney's fees already incurred as a result of defending Devine and payment in advance on a bimonthly basis of all costs and attorney's fees incurred in defense or resolution of this action.

26. As a direct and proximate consequence of Allen's breach of his contractual duties, Devine has incurred and will continue to incur damages in defending himself against Excelsior's Complaint.

WHEREFORE, Devine prays that judgment be entered in his favor and against Allen and for relief as follows:

(A) Actual damages to be determined at trial;



LAW OFFICES
Peckar & Abramson
A Professional Corporation

(B) A declaration that Allen is liable to Devine for payment of all costs and attorney's fees incurred as a result of defending Devine in this action;

(C) Costs and disbursements of this action;

(D) Pre- and post-judgment interest as allowed by law; and

(E) All other and further relief, at law or in equity, as this Court may deem just and proper.

## COUNT III
### (Contribution Against Allen and Luke Allen Under N.Y. C.P.L.R. §§ 1401-1402)

27. Devine repeats, realleges, and incorporates by reference Paragraphs 1-12 of this Third-Party Complaint as though fully set forth herein.

28. Excelsior has alleged that it made loans to Superior Broadcasting Co.

29. The loans to Superior were secured by Promissory Notes executed by Devine, Buzil and Lakeshore, as set forth in Excelsior's Complaint.

30. Throughout the course of 2004, 2005, 2006, and 2007, Devine, as an officer of Superior, used his best efforts to make sure that Superior's obligations to Excelsior were fulfilled and that Excelsior's loans to Superior were repaid.

31. In fact through his efforts, Devine caused $29,406,603 of Superior's loans to be repaid.

32. Allen also had loaned money to Superior, however, in conjunction with Excelsior's loans, Allen signed a Subordination Agreement. The Subordination Agreement stated that Allen agreed not to seek repayment of his loans to Superior until Excelsior had been repaid.

33. During September of 2007, Allen, as Superior's majority shareholder, and Luke Allen, as Guardian, instructed Devine to stop making payments to Excelsior on behalf of Superior and threatened legal action if he continued to make payments.


LAW OFFICES
Peckar & Abramson
A Professional Corporation

34. During the Summer and Fall of 2007, Allen and Luke Allen attempted to obtain repayment of Allen's loans to Superior, prior to the repayment of all of the monies loaned by Excelsior to Superior, in spite of the Subordination Agreement.

35. When Devine refused to make these payments, Allen and Luke Allen removed Devine from the management of Superior on September 19, 2007.

36. During October of 2007, Luke Allen was elected President and Director of Superior Broadcasting.

37. Luke Allen failed to make any additional payments on behalf of Superior to Excelsior.

38. The failure to make any additional payments to Excelsior was a direct and proximate result of Allen and Luke Allen's interference and actions.

39. The failure to make any additional payments to Excelsior was a direct and proximate cause of Excelsior's damages as alleged in the Complaint.

40. If Devine is found to be liable to Excelsior for any amount under Count VII of the Complaint, then Devine is entitled to contribution from Allen and Luke Allen in an amount equal to the excess paid by Devine over and above his equitable share of the judgment, calculated pursuant to N.Y. C.P.L.R. § 1402.

WHEREFORE, Devine prays that, if he is found to be liable to Excelsior under Count VII of the Complaint, judgment be entered in Devine's favor and against Allen and Luke Allen and for relief as follows:

(A) Contribution from Allen and Luke Allen in an amount equal to the excess paid by Devine over and above his equitable share of the judgment, calculated pursuant to N.Y. C.P.L.R. § 1402;

(B) Costs and disbursements;

(C) Pre- and post-judgment interest as allowed by law; and

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

  (D)  All other and further relief, at law or in equity, as this Court may deem just and proper.

              CHRISTOPHER DEVINE

             By: /s/ _____
               KEVIN J. O'CONNOR

Thomas J. Curran
Kevin J. O'Connor
PECKAR & ABRAMSON, P.C.
41 Madison Avenue, 20th Floor
New York, NY 10010
(202)382-0909
Fax: (202)382-3456
tcurran@pecklaw.com
koconnor@pecklaw.com

Dated: May 24, 2010
319406.01/05/24/10

LAW OFFICES

Peckar &
Abramson
A Professional Corporation